firmed by that of Buchanan. There is a little conflict in the testimony, respecting the time when the first engine was constructed. I do not regard it as of importance. It is impossible to see, in all this, evidence of abandonment. It was correctly said by Justice Clifford, in Jones v. Sewall [Case No. 7,495], to be settled law, that the mere forbearance to apply for a patent, during the progress of experiments, and until the party has perfected his invention, and tested its value by actual practice, affords no just grounds for presuming an abandonment. Kendall v. Winsor, 21 How. [62 U. S.] 328; Agawam Co. v. Jordan, 7 Wall. [74 U. S.] 607. It is true, an express relinquishment of an invention to the public is not indispensable to an abandonment. It may be inferred from long delay, unexplained, or from acts of the inventor inconsistent with any other theory, but it cannot be presumed from mere delay to apply for a patent, when the inventor is all the while perfecting the invention and testing its merits.

Nor has it any bearing upon the case, that Smith's experiments were made in public, and that his experimental engines were run upon a railroad—that was, a public highway. Thus only could the invention be tested. There is an obvious distinction between a public use, or a use by the public, and an experimental use in public. In many cases, it has been decided, that a use in public for test or experiment, is not such a public use as was contemplated by the act of congress, nor such a use as can be held evidence of dedication to the public. The Nicholson pavement case was notably one.

It has not been contended, and, certainly, in view of the evidence, it ought not to be, that the Smith invention was in public use, or on sale, with his consent, more than two years prior to his application for a patent. It appears to have been used on the Old Colony Railroad, in April, 1859, but there is nothing to show that such use was allowed by Smith, or that he knew of it.

My conclusions, then, upon the whole case, are as follows: 1. The combination claimed by Alba F. Smith, and described in his specification, was a patentable invention. 2. The patent granted to him on the 11th day of February, 1862, is not void for want of novelty of the invention. The invention had not been anticipated. 3. There is no sufficient evidence that the patentee abandoned the invention. 4. The patent is not invalid because the invention was in public use, or on sale, with the allowance of the inventor, more than two years before his application for the patent.

The only question that remains, is, whether the defendants have been guilty of infringement. In regard to this there is no controversy. An infringement is very clearly proved. I shall, therefore, order the injunction prayed for in the bill, and decree an account, etc. Let a decree be prepared accordingly.

[NOTE. In pursuance of the order of the court, a master was appointed to state an account of the profits realized by the defendants through their infringement of complainants' patent, and to assess the damages caused thereby. Following the rule laid down in Mowry v. Whitney, 14 Wall. (81 U. S.) 620, and finding that the defendants had received no gains by reason of the infringement, and that the case was one for damages only, the master reported such damages to be $89,644. Exceptions to this report, filed by the defendants, having been overruled (2 Fed. 677), they prosecuted an appeal to the supreme court. Here the evidence and arguments in the whole case were reconsidered, and the court, the opinion of which was delivered by Mr. Justice Gray, weighing the reasons assigned for sustaining Smith's patent in the opinion of the court below (principal case), was unable to escape from the conclusion that the application of the old truck to a locomotive engine neither was a new use nor produced a new result. 110 U. S. 490, 4 Sup. Ct. 220.

[For another case involving this patent, see Locomotive Engine Safety Truck Co. v. Erie Ry. Co., Case No. 8,452.]

---

## Case No. 8,454.

LOCOMOTIVE ENGINE SAFETY TRUCK CO. v. PENNSYLVANIA R. CO.

[See Case No. 8,453].

---

LOCUST MOUNTAIN COAL & IRON CO. (BRETTAUGH v.).   See Case No. 1,846.

LODEMIA, The (HOLMES v.).   See Case No. 6,642.

---

## Case No. 8,455.

In re LODER et al.

[3 Ben. 211;[1] 2 N. B. R. 517 (Quarto. 162); 2 Am. Law T. 106; 1 Am. Law T. Rep. Bankr. 159.]

District Court, S. D. New York. April 23, 1869.

REGISTER'S FEES AS ASSIGNEE.

Where bankrupts surrendered their property to a register, and thereafter, by order of the bankruptcy court, custodians were appointed and were directed to sell certain goods at retail, paying over the proceeds to the register daily, which was done during twenty-five days, in which time $15,000 was so received by the register: *Held,* that the register was entitled to be paid $5 a day, under section 47 of the bankruptcy act [of 1867 (14 Stat. 540)], and the percentage on the $15,000 allowed to assignees by section 28.

[Cited in Williams v. Merritt, 103 Mass. 187.]

In this case, a register in bankruptcy applied to the court, on petition, stating that, the bankrupts [Loder Brothers] having surrendered all their property to him, on his application two custodians were appointed to take possession of and sell certain goods at retail, paying over to him all proceeds of sales; that the custodians had, during twenty-five days, paid over to him $15,000, which he had deposited, from time to time; and that he had drawn checks for the payment of expenses and otherwise for the carrying

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]